No. 57817.—J. T. Steeb & Co., Inc. *v.* United States, petition 6837–R (Portland Oreg.).

Rao, Judge: This is a petition for the remission of additional duties assessed pursuant to the provisions of section 489 of the Tariff Act of 1930 against three importations of earthenware glazed tiles. The merchandise in question was entered in the name of petitioner, a customs broker, as importer of record, for the account of Donald A. Holm, Inc., ultimate consignee, at the invoice prices stated to represent export value. Appraisement was made on the basis of foreign value and resulted in higher values for each of the invoiced items. The additional duties, here sought to be remitted, were accordingly assessed.

Three witnesses testified in behalf of petitioner in this case. The first of these was Charles B. McDougal, presently, and for the past 7 years, secretary of J. T. Steeb & Co., Inc. He stated that he was not with the company during 1939 and 1940, when the subject merchandise was imported and the involved entries made; and that none of the people who were in responsible positions with the company at that time is still in its employ.

This witness produced certain documents taken from the files of his company in connection with the three entries here involved. He admitted that, except for some papers which he copied from the collector's files during the course of this litigation, the first time he saw these papers was the day before the trial. The documents were received in evidence, over the objection of Government counsel that the witness was not qualified to identify them and, moreover, that they were self-serving declarations, and were marked, respectively, petitioner's collective exhibits 1, 2, and 3. Insofar as their relevance here is concerned, each of the exhibits contains a so-called submission sheet presented to the appraiser prior to each entry and returned by that official marked "No information." In addition, petitioner's collective exhibit 2 contains a letter, dated September 9, 1940, sent by Donald A. Holm, Inc., to petitioner, denying that the entered values were incorrect and refusing to amend the entries.

Robert S. Dick, called on behalf of petitioner, testified that, during the years 1938 to 1941, he was an officer of Donald A. Holm, Inc., in charge of stock on the floor and selling to the trade; that, in the year 1940, the company was having difficulty in making payment of duties at Portland, Oreg.; that the corporation did not have enough money to pay salaries; that this condition first obtained in 1935, and became progressively worse, until 1948, when the corporation was dissolved. When asked why Donald A. Holm, Inc., did not pay the additional duties due at Portland, in the latter part of 1940, the witness stated:

We didn't have the money but we did pay out as far as we could go. The details, of course, I do not know, but I do know that we hadn't enough money to pay out. I don't remember when we paid out the amended or the added duties. We paid out roughly $1,400, and that was the end of it, but I can't tell you what year.

William X. Huber, a customhouse broker in Los Angeles, who had represented Donald A. Holm, Inc., until 5 years prior to 1942, also testified for petitioner. He stated that, in 1941, the amount of $1,400 was paid by the Holm people on amended entries at the port of Los Angeles.

During the course of the examination of witness Huber, counsel for petitioner stated to the court that inability on the part of Donald A. Holm, Inc., to pay the additional duties was its reason for not amending the entries.

At a hearing at the port of New York, counsel for petitioner made the following further statement:

Mr. Tuttle: This petition was filed in Portland, Oregon. It relates to some tile imported from England and naturally appraised at values higher than the entered values. There has been testimony taken in Portland, Oregon, and from that testimony, it shows that the actual importer was Donald A. Holm. The evidence was not satisfactory from the petitioner's viewpoint because the witness was an employee of J. T. Steeb and Co., a customs broker in Portland, Oregon, who appears as the entrant of the merchandise and the gist of the testimony is that the man who gave it didn't know very much about the transaction because he was not employed in that business at the time of importation and also, he showed there was no one then employed, that is in 1952 by Steeb who was employed by the same firm at the time of the importation. Petitioner, however, will be content to rest upon a stipulation as to which we have agreed, that is counsel have discussed it, this morning and I now offer to stipulate that if Examiner Walker were called as a witness, he now being an examiner at the port of New York, he would testify that he was the examiner in Portland, Oregon, and the examiner who handled this particular importation, and that prior to appraisement and within the time during which amendments could legally be filed, he gave to the importer's representative J. T. Steeb & Co., opportunity to amend this entry amounting to—in the amount equal to the values at which the appraisement was finally made, but that no amendment was filed or tendered. Is that agreeable?

Mr. Antus: That is our understanding, your Honors.

Mr. Tuttle: We rest upon that. * * *

Section 489 of the Tariff Act of 1930, which controls this action, both with respect to the assessment of additional duties for undervaluation and the application for the remission thereof, provides in part as follows:

* * * Such additional duties * * * shall not be remitted nor payment thereof in any way avoided, except * * * upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.   * * *

In the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, our appellate court outlined the quality of proof required to be submitted in invoking the beneficient provisions of the remission statute in the following language:

* * * Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief: First, He must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

We fail to find any evidence in the record purporting to establish any of the fundamental facts which our appellate court has held to be requisite to a recovery in a proceeding for the remission of additional duties.   The proof is directed almost entirely to the explanation that the failure to amend the involved entries was occasioned by the impoverished condition of the ultimate consignee, with the consequent inability to pay the additional duties.   Since the duties an importer is required to pay are predicated upon final appraised value, when such value exceeds the entered value [section 503 (a) of the Tariff Act of 1930], and accrue in any event, impecuniousness on the part of an importer is not a fact relevant to the issue of good faith.

So far as the intent of the parties at the time of entry is con cerned, we are left with the inference that no specific instructions were issued by the actual consignee to its broker with respect to value, and that the broker, after obtaining the return of the submission sheets, marked "No information," simply adopted the invoice values in making entry.

It has been held, however, that where the appraiser has no information as to value, and so advises a broker, the latter is put upon notice and is required to seek verification of the values he intends to use.   *United States* v. *Edward H. Corrigan*, 38 C. C. P. A. (Customs) 26, C. A. D. 434; *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306.

It appears, moreover, that when the broker was advised that the entered values were too low, that advice was forwarded to the ultimate consignee.   In reply to the broker, the importer refused to accede to the position taken by the appraiser's office, not because of poverty, but because of a conviction that the entered values represented the "true export values on the quality of merchandise which we order and which we received."

Thus, the theory petitioner has pursued in this case to establish good faith lacks even the character of consistency.   The record shows no more than an attempted justification for failure to fulfill the statutory duty of entering imported merchandise at its true value.   No satisfactory explanation of the choice of the values which petitioner adopted in making the entries herein is afforded us.

In this, as in all remission cases:

* * *'It is not a question as to whether the record affirmatively shows that appellant entered the goods in bad faith, but the question is whether or not it has met its burden of proving to the trial court that in making the entries such good faith was exercised as is required by the statute. [*Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41.]

We are not satisfied by the evidence in this case that the undervaluation of the instant importations was without any intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is, therefore, denied.

Judgment will be entered accordingly.